[Crim. No. 628. Fourth Dist. May 22, 1945.]

THE PEOPLE, Respondent, v. CLYDE A. PIERSON, Appellant.

Jerome L. Richardson and Miguel Estudillo for Appellant.

Robert W. Kenny, Attorney General, Frank Richards, Deputy Attorney General, Jerome B. Kavanaugh, District Attorney, and C. O. Thompson, Deputy District Attorney, for Respondent.

BARNARD, P. J.—The defendant was charged with the crime of abortion in each of three counts of an indictment. In Count 1, it was charged that on December 17, 1943, he administered a drug to a Mrs. Brown and used an instrument with the intent to procure a miscarriage when it was not necessary to preserve her life. In Count 2 a similar offense was alleged to have been committed on December 27, 1943, in connection with an unmarried woman. In Count 3, a similar offense involving another unmarried woman was alleged to have been committed on December 28, 1943.

The general facts in relation to Count 1, as disclosed by the People's evidence, are as follows: On December 17, 1943, Mrs. Brown and her husband came from their home in Los Angeles to the office of the defendant, who is a physician and surgeon in San Bernardino. They had never met the defendant but knew of him by reputation. They waited in the reception room a few minutes, and then the defendant took Mrs. Brown into one of several smaller rooms in the rear of the office. Mrs.

Brown told the defendant that she believed she was pregnant and that she would like to be relieved of her pregnancy. The defendant told her he would relieve her as soon as he dismissed a lady in an adjoining room. The defendant then told her that his fee would be $50. He returned in a few minutes and told Mrs. Brown to lie down on an operating table, which she did. It is sufficient here to say that if her testimony as to what was then done by the defendant, including the use of certain surgical instruments, is true there can be no doubt that an abortion was performed or at least attempted.

Mrs. Brown then walked to the reception room and told her husband that the defendant wanted to see him. Mr. Brown walked back to one of the rear rooms and paid the defendant $50. Mr. and Mrs. Brown then returned to Los Angeles.

Mrs. Brown began to have pains that night and, without going into details, her condition grew progressively worse until she called in a Dr. Levin, five days later. He took her to a hospital, gave her an anaesthetic and removed certain tissues which remained. This doctor's testimony leaves no doubt that an abortion had been performed, or partially performed, on Mrs. Brown within a few days theretofore. Mrs. Brown remained in the hospital twenty-three days.

The woman involved in Count 2 testified that she went to the office of the defendant on December 27, 1943, at about 2:30 o'clock in the afternoon, that she told the defendant that she was pregnant and wanted him to help her, and he told her that he would do so and that the fee would be $50. She then testified as to what the defendant did, including the use of instruments, and her testimony, if true, sufficiently shows a violation of section 274 of the Penal Code. She had never seen the defendant before but had heard of him. After the operation the defendant asked her to pay him $50. She told him that she did not have the money with her and he said she should have told him before he performed the operation.

Late that night she had pains and took some pills the defendant had given her, but got no relief. About 1 o'clock on the morning of December 28, 1943, she was taken to the Redlands Community Hospital where she passed a baby about 5 o'clock a. m. Thereafter, she was treated by another doctor. Two or three days later at the hospital, in the presence of the defendant, she told two special agents for the State Board of Medical Examiners that she had gone to the defendant for the purpose of having him give her relief for her pregnancy,

told them what the defendant had done, and in response to a question told them that she had not paid the defendant the $50. The defendant then asked her if she was going to pay him his $50.

The woman involved in Count 3 testified that she called at the office of the defendant between 9 and 10 o'clock a. m. on December 27, 1943; that she had never met the defendant prior to that time; that she told the defendant she was pregnant and asked him if he could get rid of the child for her and the defendant replied that he could, but that it would be dangerous because she was so far along; that the defendant told her it would cost her $50 and she told him she would come back when she got the money; that she returned to the defendant's office on the morning of December 28, 1943; and that she paid the defendant $50. She then testified as to what the doctor did, including the use of instruments, and said that she had no pain and could feel little of anything; that she returned on the 29th because she had had no results and the defendant injected something into her leg with a syringe and needle; and that she returned on December 30th, because there were still no results. At that time, she testified, the defendant told her that they had him under $1,000 bail for illegal surgery, and then he gave her money back. After reading in a newspaper an account about the condition of the women involved in Counts 1 and 2 she went to the district attorney's office and told her story. She then went to another doctor, who took care of her, and a child was born to her on March 5, 1944.

A jury returned a verdict of guilty on all three counts and the defendant has appealed from the judgment and from an order denying his motion for a new trial.

■ It is first contended that several instructions given to the jury were prejudicially erroneous. Two of these are very similar. People's instruction No. 7, after stating that in such a case a defendant cannot be convicted upon the testimony of the woman involved unless she is corroborated by other evidence, contains the following:

"In this connection you are instructed that the corroborating evidence, however, need not in degree be such as to establish guilt. All that is required in such a case is that there be produced some testimony other than that of the woman upon whom the abortion, or attempted abortion, was made which

tends in some slight degree at least to implicate the defendant in the commission of the crime of which he is on trial."

· People's instruction No. 15, after stating that a conviction cannot be had upon the testimony of an accomplice unless it be corroborated by other evidence tending to connect the defendant with the commission of the offense, contains the exact language above quoted except that it refers to "testimony other than that of the accomplice" instead of "testimony other than that of the woman (involved)."

It is argued that these instructions omit the essential element that the corroborative evidence, standing alone and without the aid of the testimony of the accomplice, must tend to connect the defendant with the commission of the crime. Appellant relies on *People* v. *Compton,* 123 Cal. 403 [56 P. 44], where the jury was told that it is sufficient if the corroborative evidence "tends in any way" to connect the defendant with the commission of the crime charged. It was there pointed out that the language used, "tends in any way," might be taken by the jury as authorizing it to consider the other evidence in connection with the testimony of the accomplice. The instruction with which we are here concerned differs materially from the one there considered. The jury was here told that all that is required in this regard is that evidence be produced other than the testimony of the woman involved which tends to implicate the defendant and, in the other instruction, that there must be some evidence other than that of the accomplice which tends to implicate him. This language excludes from consideration in this connection the testimony of the women or of the accomplices, and the jury was rather clearly told that there must be evidence, other than the testimony of these persons, which tends to connect the defendant with the commission of the crime. While these instructions could have been better worded it is not probable that the jury was in any way misled and it cannot be held that the instructions as given were prejudicially erroneous.

██ Complaint is also made of two other instructions bearing on the defense of an alibi. This defense relates to the offense charged in Count 2, and to some extent to that charged in Count 3 since the woman there involved said she talked to the appellant at his office after 9 o'clock on that day. While the evidence is conflicting, there is very substantial evidence to the effect that the appellant was suffering from flu on December 27, 1943, that he spent most of the day at home in

bed, and that he was not in his office after 9 o'clock a. m. on that day. People's instruction No. 11, after stating that one of the defenses claimed with respect to Count 2 was that of alibi, that is that the defendant was elsewhere when this offense was alleged to have been committed, then reads: "The testimony offered to prove this defense should be subject, like all evidence in the case, to rigid scrutiny for the reason witnesses when truthful may be honestly mistaken in or forgetful of times and places." Similar instructions have been repeatedly criticized and it has frequently been held that instructions of that nature should not be given in cases where there is substantial evidence supporting a defense of alibi. The respondent argues that this instruction is not erroneous since it included the phrase "like all evidence in the case" and thus directed the jury to apply the same rule in this connection as that applied in considering other evidence, and that any possible error was cured because in other instructions the jury was told that it was sufficient if the evidence raised a reasonable doubt of the appellant's presence at the time and place in question. There was substantial evidence of an alibi which the jury should have been left free to consider on its merits. The attention of the jury was specially called to the evidence to the effect that the appellant was not in his office at that particular time, and it would naturally understand that it was expected to carefully scrutinize that evidence because witnesses might easily be mistaken in such matters. Clearly, this instruction should not have been given.

People's instruction No. 14 is also obviously erroneous. This reads:

"The jury is instructed that when the People offer evidence and make out a prima facie case of guilt against the defendant and the defense of alibi is relied on, then the burden of proof is on the defendant to show by a preponderance of the evidence offered that at the time and place in question it was impossible for the defendant to have been there."

The respondent concedes that this instruction was erroneous, as it must, but argues that it was not prejudicial since in several other instructions the jury was told that it was sufficient if the evidence in this connection raised a reasonable doubt as to the presence of the defendant, that if there was a reasonable doubt as to his presence he should be given the benefit of the doubt, that all elements in the case must be

proved beyond a reasonable doubt, and other instructions of similar import. Not only does it thus appear that the instructions in this connection were conflicting, but even when all of the instructions are read together No. 14 stands out as more definite and puts a burden on the appellant which is not warranted by our law. It would seem probable that the jury would naturally pay greater attention to this instruction, which pointed out definitely what the appellant must do in this regard, than to other general instructions which were more or less connected with reasonable doubt and other matters. In *People* v. *Costello,* 21 Cal.2d 760 [135 P.2d 164], under circumstances which seem less prejudicial to the defendant than those with which we are here concerned, especially in view of the two erroneous instructions on the subject of alibi which here appear, the court said:

"A suggestion may not be made to the jury that an alibi must be proved by a preponderance of the evidence, or that alibi evidence must satisfy the jury of the defendant's innocence, or that the jury must give less credit to testimony of alibi witnesses, or more careful scrutiny or less weight to alibi than to other evidence in the case. It is obvious that in cases where the defendant's own testimony supports the verdict of guilty (*People* v. *Hammer,* 74 Cal.App. 345 [240 P. 56]), or where there is no evidence in support of the alibi (*People* v. *Smith,* 189 Cal. 31 [207 P. 518]; *People* v. *Johnson,* 203 Cal. 153 [263 P. 524]), the giving of an erroneous instruction on the subject of alibi should not be held to prejudice the rights of the defendant. But in cases where the evidence raises a conflict it may not properly be said that the harm resulting from the giving of such an instruction is overcome by general instructions so as to justify on that ground alone an affirmance pursuant to section 4½ of article VI of the California Constitution."

Under these circumstances, it must be held that these two instructions are so prejudicial as to require a reversal insofar as the conviction of the offense alleged in Count 2 is concerned.

The appellant next contends that the court erred in refusing to give two instructions offered by him. The first of these was to the effect that Mr. and Mrs. Brown and the two women involved in the other two counts were all accomplices as a matter of law, and that they were all liable to prosecution for the identical offense charged against the appellant. In

his closing brief the appellant admits that this instruction was properly refused in view of the decisions in the cases of *People* v. *Clapp,* 24 Cal.2d 835 [151 P.2d 237] and *People* v. *Wilson,* 25 Cal.2d 341 [153 P.2d 720].

It is further urged that the court erred in refusing to give another instruction to the effect that the appellant must not be convicted upon the statements made to him by Mrs. Brown as to her condition and the purpose of her visit, as such statements are hearsay, and were admitted only to establish Mrs. Brown's condition and the avowed purpose of her visit. The appellant cites *People* v. *Wright,* 167 Cal. 1 [138 P. 349] ; *People* v. *Northcott,* 45 Cal.App. 706 [189 P. 704] and *People* v. *Thomas,* 51 Cal.App. 731 [197 P. 677], but makes no argument other than that he was entitled to have this instruction given under these authorities. In the instruction here in question the statements referred to were made to the defendant himself. Moreover, in other instructions the court fully informed the jury with respect to the elements which must be proved and upon which they could base a conviction. No prejudicial error appears in refusing to give this instruction.

It is next contended that the district attorney was guilty of prejudicial misconduct. In his opening statement the district attorney stated that he thought the evidence would show that Mrs. Brown was a stranger to the appellant and came to him for relief because she had heard of him by reputation. Later on he said: "I think we will be able to produce before you the instruments that were in the office at that time, and, no doubt, the one which was used." The first statement is fully supported by the evidence later produced, no objection was made to the statement when made, and no argument is here made as to why it indicates misconduct. With respect to the second statement, it is argued that the district attorney knew that he could not prove which instrument was used. No objection was made at the time and there is evidence that instruments similar to those taken from the appellant's office were used. It is then charged that the district attorney asked four questions knowing that the evidence was inadmissible. These questions related to articles which had been taken from the appellant's office and the appellant himself testified that these articles could be used in performing an abortion. Three charges are made in connection with the argument to the jury. The first is that

the district attorney stated that Mrs. Brown was not an old patient of the appellant but came to him through reputation. This was fully supported by testimony. ▇ In the second instance, the district attorney stated that the two agents of the State Board of Medical Examiners had learned of the situation when Dr. Levin called them in regard to Mrs. Brown. An objection was made and the court asked the district attorney if he was sure he was within the evidence. The district attorney replied "I think I am; but I withdraw the statement, if there is any question on the part of the court or counsel about it." The court replied that he did not recall any such testimony and the matter was dropped. ▇ In the other instance, the district attorney referred to the atrocities perpetrated on women and children in the Axis countries which we rightfully look upon with horror and then stated that here we find the lives of unborn children, who have the right to be born and live, being taken for the purpose of getting a fee of $50. While it may be conceded that this statement had better have been omitted we find nothing in this or the other matters referred to which sufficiently disclose prejudicial misconduct.

▇ Some nine charges of misconduct on the part of the court are then made. The first is that he refused to exclude the witnesses on the request of the appellant. It is argued that while the district attorney did not object to the request he really indicated that he thought this course unnecessary, and that since the witnesses were not excluded the jury must have thought the court was in favor of the prosecution. No such conclusion can be drawn and the matter was entirely within the discretion of the court. ▇ Another assignment is made in connection with a question asked of a laboratory technician as to how she knew that a certain solution was a "4%" solution. The court intervened after she had answered the question two or three times and then, in reply to a question by appellant's counsel as to whether they were being limited in questioning the witness, stated that he was merely trying to save time, that he was not limiting them and that they could ask any questions they wanted to. It is argued that this was an essential point and the court took the People's part against the appellant. The entire matter was immaterial and the court was extremely patient. In one instance, the court stated that a certain question was a double question. In another, in overruling an objection, the judge

stated he was doing so because of a certain case which he cited. During the cross-examination of Dr. Levin counsel for appellant objected to a certain question and started to argue. The court said "Make your objection and I will rule on it." At another point in the examination of the same witness a motion to strike an answer was made and a colloquy ensued between court and counsel which takes up several pages in the transcript. It is argued that this discloses impatience, on the part of the court, with counsel for the appellant. The record indicates considerable patience on the part of the court and that he was correct when he finally remarked "We are wasting a lot of time on matters entirely irrelevant." In another instance the court remarked "Counsel, ask the question and lets not comment on the effect of it." It is argued that the court thereby reprimanded appellant's counsel. The record discloses that this remark was addressed to counsel for the People. At another time, the court told the appellant while on the stand to confine himself to the questions asked and not to volunteer. In connection with an objection to a question asked of the appellant on cross-examination appellant's counsel stated that he had not been qualified as an expert in chemistry. The court remarked "You qualified him as a doctor." It is contended that the court was thereby arguing for the People.

Most of these matters were trivial or unimportant and we find nothing in the record in connection with any of them which would justify a finding of prejudicial misconduct on the part of the court.

 It is next contended that the court committed prejudicial error in admitting in evidence various articles, consisting mostly of surgical instruments and a number of empty collapsible tubes, which had been taken from the appellant's office at the time he was arrested. It is argued that these articles were not admissible since section 1954, Code of Civil Procedure provides that before any object cognizable by the senses is introduced in evidence it must not only relate to the facts in dispute but must be identified as being the instrument with which the alleged crime was committed. That section provides that when such an object "has such a relation to the fact in dispute as to afford reasonable grounds of belief respecting it, or to make an item in the sum of the evidence" it may be shown to the jury or its existence and

298

character proved. These articles were found in the possession of the appellant, were a part of the surrounding circumstances, and had such a relation to the matter that they might well afford reasonable grounds of belief respecting it. In general, the objection is made that there is no evidence here positively identifying any one of these instruments as one that was actually used on the occasions here in question. They were taken from the appellant's office, there is testimony that at least some of them could have been used in producing an abortion, and in connection with Count 1 Mrs. Brown testified that two instruments were used which were similar to two of those taken from the appellant's office. Similar evidence was held admissible in *People* v. *Marineau,* 55 Cal.App.2d 893 [132 P.2d 22]; *People* v. *Lee,* 81 Cal.App. 49 [252 P. 763] and *People* v. *Watanebe,* 91 Cal.App. 290 [266 P. 1000]. The appellant argues that in those cases the persons in whose possession the articles were found were not doctors. However, in *People* v. *Murphy,* 60 Cal.App.2d 762 [141 P.2d 755], it was held that the court properly instructed the jury that the defendant was lawfully entitled to have such instruments in his possession since he was a doctor and since the instruments might have a legitimate use. A similar instruction was given by the court in this case, which sufficiently protected the rights of the appellant. It was proper to show that the appellant had access to such instruments and the possession of such instruments and equipment was a circumstance which might be considered, which had a relation to the fact in dispute, and which would naturally constitute one of the items in the sum of the evidence. We find no error in this connection.

The appellant next makes thirty-three assignments of error in connection with rulings on the admission of other evidence. Nine of these relate to evidence which affected only the second and third counts. Not only are these unimportant in themselves, but they need not be considered in view of our conclusion that there must be a reversal as to those counts. Ten of these assignments are based upon appellant's theory that the articles taken from his office were not admissible in evidence and are sufficiently covered by what we have already said in that regard. Two assignments relate to the presence of a Mrs. Taylor in the office of the appellant at the time Mrs. Brown first went in, and to a conversation between Mrs. Brown and the appellant which Mrs. Taylor overheard. The presence of Mrs. Taylor in the office at that time was fully estab-

lished, and was admitted by all, and the conversation referred to was fully brought out. No possible error appears in this connection. The remainder of the assignments are to the effect that certain matters were not proper cross-examination of the appellant and of a doctor who testified in his behalf. These contentions are without merit.

We have carefully examined and considered all of these assignments of error, but it would serve no useful purpose to set them forth and analyze them in detail. In few, if any, can any error be found and any possible error in these few is either immaterial or of such small importance that it could not possibly have prejudiced the rights of the appellant or affected the result.

The final contention is that the verdict is contrary to the evidence and the law in that it was brought about by the misconduct of the court and of the district attorney, and because the testimony of the women involved in the respective counts was not sufficiently corroborated by other evidence. The first of these matters has already been covered.

In our opinion, there is sufficient corroboration of the testimony of Mrs. Brown, who was involved in the first count. That an abortion was performed or attempted in her case was thoroughly established by the testimony of Dr. Levin, who was called in to care for her a few days later. There is other evidence which tends to connect the appellant with her condition as found by Dr. Levin. The appellant admitted on the stand that Mr. and Mrs. Brown were in his office at the time in question. Mrs. Taylor, who was in another room when Mrs. Brown first went in, heard the appellant talking with a woman whom the doctor identified as Mrs. Brown and heard this woman say that she thought she was pregnant. The appellant admitted that he talked with Mrs. Brown, and also that he talked with Mr. Brown in one of the back rooms immediately after Mrs. Brown had gone into the front office, although he says that nothing was paid to him. Mr. Brown testified that his wife returned to the reception room twenty or twenty-five minutes after she went back to the rear rooms; that when she returned she gave him a message; that he then went back into one of the rear rooms and asked the appellant how much he owed him; that the appellant replied, "$50"; and that he then paid the appellant $50 in currency. While Mr. Brown was an accomplice, his evidence may be accepted as further corroboration of the

testimony of Mrs. Brown (*People* v. *Clapp*, 24 Cal.2d 835 [151 P.2d 237]; *People* v. *Wilson*, 25 Cal.2d 341 [153 P.2d 720]), and his testimony was also corroborated to some extent by other evidence tending to connect the appellant with the offense charged. It cannot be held that there is an entire absence of evidence, other than the testimony of Mrs. Brown, which tends to implicate the appellant with the commission of the crime charged in the first count.

A different situation appears in connection with the offense charged in the third count. The testimony of the woman there involved is in itself far from satisfactory. Dr. Lashley, to whom she went a few days later, testified that he examined her and found nothing abnormal, that there was "no evidence of trauma" and that the mucous plug in the cervix was in place. Later, this woman gave birth to a baby.

The only evidence, aside from the testimony of this woman, which in any way connects the appellant with her is the fact that the appellant went to see Dr. Lashley some days after he was arrested and asked Dr. Lashley whether this woman was a patient of his. Dr. Lashley testified that he took a card from his files marked with the name of this woman and read from it to the appellant "Said injected by Dr. Pierson two days ago," and that the appellant had then denied that he had done anything of the kind. Dr. Lashley further testified that the appellant then told him that under a certain section of the Penal Code any doctor who sent a woman to another doctor for the purpose of having an abortion performed was an accomplice. There is no evidence that Dr. Lashley had sent this woman to the appellant for that purpose and that statement, as made by the appellant, has little, if any, evidentiary value in connecting the appellant with the offense charged in this count. After carefully reviewing the evidence, we are of the opinion, and so hold, that sufficient corroboration of the testimony of the woman involved in Count 3 does not appear. Moreover, this count is affected by the erroneous instructions on alibi.

For the reasons given the judgment is affirmed insofar as it relates to Count 1 of the indictment, and is reversed insofar as it relates to the other two counts. The order denying a new trial is affirmed insofar as it relates to Count 1, and is reversed insofar as it relates to the other two counts, with directions to grant the same as to those counts.

Marks, J., and Griffin, J., concurred.