[Civ. No. 18948. First Dist., Div. One. Apr. 11, 1961.]

JOHN B. SOUTHERS, Plaintiff and Appellant, v. GORDON D. SAVAGE et al., Respondents; ADOLPHO NUNSIALE et al., Defendants and Appellants.

Edward J. Reidy and J. J. Doyle for Plaintiff and Appellant.

Delany, Fishgold & Freitas and Elmer P. Delany for Defendants and Appellants.

Carroll, Davis, Burdick & McDonough and Barfield & Barfield for Respondents.

BRAY, P. J.—Southers and cross-complainants Attilio Nunsiale and Adolpho Nunsiale appeal from judgment in favor of defendants.

QUESTIONS PRESENTED

1. Admission of oral statement of David McGuire on theory of adoptive admission.

2. Alleged error of court:

(a) in misquoting testimony of Southers;

(b) in stating that defendants did not have to prove that Southers was physically able to reply, in order to consider his silence as an adoptive admission;

(c) in permitting traffic officer to opine as to point of impact;

(d) in instructions.

3. Alleged error of Hertz counsel.

### RECORD

Plaintiff sued defendants Savage, the Hertz Corporation, and the two Nunsiales for damages for personal injuries. Later plaintiff added defendant Chess Bros., Ltd., for whom Savage worked. The Nunsiales answered and cross-complained against Southers, Savage, Hertz and McGuire. (The latter was not then a party to the action.)* A nonsuit was granted the two Nunsiales on plaintiff's complaint, and to Southers on the Nunsiales' cross-complaint. The jury found in favor of defendants Savage, Chess Bros. and Hertz on plaintiff's complaint, and also in favor of said defendants on the Nunsiales' cross-complaint.

### EVIDENCE

Plaintiff Southers was riding as a guest passenger in a Dodge car driven by McGuire. That car was northbound on highway 101 near Brisbane. The Dodge collided with a Ford driven by Savage, also northbound. The Dodge then careened over to the wrong side of the highway, striking head on Attilio's southbound Pontiac in which Adolpho was riding. Southers claimed Savage's car was the cause of the accident; that it sideswiped McGuire's car causing the latter to lose control, cross the highway and strike Nunsiale's car head on. Savage claimed that the McGuire car was the cause of the accident, sideswiping his car and crossing into the path of Nunsiale's oncoming car. Thus, the important question in the case was which car sideswiped which.

No claim is made as to insufficiency of the evidence; only errors of law are urged.

### 1. *Oral statement of McGuire.*

Shortly after the accident occurred, Officer Cherry arrived at the scene. The officer, over plaintiff's objection, was permitted to testify that McGuire in Southers' presence stated that he, McGuire, thought he had passed the Savage car sufficiently so that he could turn into that lane and that he side-

---

*Hertz answered the complaint and cross-complaint and cross-complained against McGuire for damage to the Ford owned by it and being driven by Savage. McGuire paid into court the sum sued for. This cross-complaint was then dismissed.

swiped the Savage car. Southers did not comment. There was a conflict in the evidence as to whether Southers, who was sitting alongside McGuire in the car, was unconscious or otherwise not in a condition to reply when the statement was made.

Section 1870, Code of Civil Procedure, provides: ". . . evidence may be given upon a trial of the following facts: . . . 3. An act or declaration of another in the presence and within the observation of a party, and his conduct in relation thereto. . . ." (See *People* v. *Willmurth* (1947), 77 Cal.App.2d 605, 614 [176 P.2d 102], and *People* v. *Simmons* (1946), 28 Cal.2d 699, 712 [172 P.2d 18], pointing out that this rule is an allowable exception to the hearsay rule.)

The evidence was admissible. Southers in his complaint alleged that the accident was caused by Savage sideswiping McGuire's car, and maintained that position throughout the trial, in fact testified to that effect. Thus evidence that immediately after the accident he sat supinely by when the driver of the car in which he was riding gave the officer a version of the accident completely contrary to that which Southers claims was the true version, and made no comment, was admissible. The jury were entitled to consider whether or not his silence did not then mean agreement.

Appellant's main attack upon the admissibility of this evidence is that his physical condition was such that the doctrine of adoptive silence could not apply. Of course the doctrine does not apply if the party is in such physical or mental condition that a reply could not reasonably be expected from him. (See *Gerulis* v. *Viens,* 130 Me. 378 [156 A. 378, 76 A.L.R. 1387]; *Lichtenstein* v. *Cascio,* 274 App. Div. 309 [83 N.Y.S.2d 195]; *People* v. *Simmons, supra,* 28 Cal.2d 699.)

Southers testified that he became unconscious immediately upon the happening of the accident. Dr. Key, who examined Southers within 30-45 minutes after Southers arrived at the hospital, stated that Southers was suffering from concussion and great shock, his condition was very critical, and suddenly became worse and it looked almost as if he might expire. But on arrival he was conscious and gave "a little history as to what had occurred just prior to the accident." However, against this testimony was that of an independent witness Dutar, and Officer Cherry, whose testimony would support a finding that Southers was in a condition which would not excuse a failure to speak.

While it is the duty of the judge to determine, in the first instance, whether the evidence of the condition of the

party is such that the doctrine of adoptive admission by silence would apply (*People* v. *Willmurth, supra,* 77 Cal.App.2d 605, 615), the ultimate determination of that question where the evidence, as here, is conflicting, is up to the jury. The court fully instructed the jury at the time of the admission of the evidence on the subject, pointing out that the determination of Southers' condition was for the jury, not for the court.

Although the trial court stated that it would not admit the evidence on that ground, the evidence was also admissible on the ground of spontaneous declaration or res gestae. (See Code Civ. Proc., § 1850 and § 1870, subd. 7.) ██ If evidence is admissible on any ground, even though such ground is not specified, either intentionally or unintentionally, by the trial court, this court will not find error in its admission. (See *Wilcox* v. *Berry* (1948), 32 Cal.2d 189, 192 [195 P.2d 414].)

██ The conversation between Officer Cherry and McGuire occurred so closely after the accident as to be a part of the res gestae. The officer testified that he arrived at the scene six minutes after he received the radio call concerning the accident. He immediately went to the Dodge car in which McGuire was at the wheel, with Southers sitting beside him. Cherry leaned in the window and asked McGuire how the accident happened. Dutar testified that looking in his rear view mirror he saw the accident take place, pulled his car off the highway, and went back to render assistance. Reaching the McGuire car he saw both McGuire and the plaintiff in the front seat. They were both conscious and he talked with both of them. Officer Cherry arrived within 5-7 minutes of the occurrence of the accident. Defendant Savage testified that he parked approximately 600 feet beyond the point of collision, immediately got out of his car and walked back to the damaged cars. The officer had already arrived by the time Savage reached the cars. Attilio Nunsiale testified he was still in his car when the officer arrived.

██ These circumstances meet the test of the res gestae rule as set forth in *Showalter* v. *Western Pacific R. R. Co.* (1940), 16 Cal.2d 460, 468 [106 P.2d 895]: "To render them admissible [the spontaneous statements] it is required that (1) there must be some occurrence startling enough to produce this nervous excitement and render the utterance spontaneous and unreflecting; (2) the utterance must have been before there has been time to contrive and misrepresent, i.e., while the nervous excitement may be supposed still to dominate and the reflective powers to be yet in abeyance; and (3) the utter-

ance must relate to the circumstance of the occurrence preceding it. (Wigmore on Evidence, [2d ed.], § 1750.)''

''[T]hey were made before the excitement attending the accident had subsided.'' (*Lloyd* v. *Boulevard Express* (1926), 79 Cal.App. 406, 411 [249 P. 837].)

Applicable here is the language in *Lane* v. *Pacific Greyhound Lines* (1945), 26 Cal.2d 575, 583-584 [160 P.2d 21]: The statements ''were made near the time of the accident. They were made by a participant who was the driver of an automobile that had just collided with and badly damaged another vehicle. He had looked at decedent's vehicle and found decedent slumped over the steering wheel apparently dead. Certainly the statements were made under the stress of excitement and emotional upset which would accompany such an event, and *when we also consider that they were against the declarant's interest, they are peculiarly imbued with a trustworthy character.*'' (Emphasis added.)

 ''To be admissible as res gestae, declarations need not have been made by the parties to the litigation. They are admissible even if made by third persons—particularly if made in the presence of the parties, though they need not necessarily be made in the presence of the parties.'' (19 Cal. Jur.2d § 451, pp. 210-211.)

There was no error in the admission of the evidence.

2. (a) *Misquotation by the Court.*

 In discussing the admission of McGuire's statement the court in the presence of the jury said concerning Southers: ''As I recall it, I think he said he regained consciousness in the ambulance. . . . He said he remembered being in the ambulance and then he passed out.'' The court had stated that Southers' condition was a matter of proof that the jury would have to determine. After making the above statements the court said: ''In any event, the testimony is in the record'' and that counsel would have to argue to the jury whether Southers was conscious to the point that he ''understood what was going on, and so forth. I can't determine that for you.'' The court was in error in its statement as to what Southers had testified, confusing his testimony with that of another rider in McGuire's car. The court's attention was not called to the error. Both during the discussion concerning the admission of the evidence as well as in the court's final instructions to the jury, the court made it abundantly clear that the jury were the sole judges of the facts and that if the court ''in discussing with counsel any objection or motion . . . seemed

to you to indicate that the Court had some opinion upon the merits of the case, or upon some fact or issue involved in the case,'' the jury were to disregard such statement. There was no prejudice.

2. (b) *Statement Concerning Adoptive Admission.*

 ██ Plaintiff was objecting to the admission of Officer Cherry's testimony concerning McGuire's statement, stating that to lay the proper foundation defendants must show that Southers was in such a mental or physical condition that he was unable to participate in the conversation. The court said, ''I don't think that is necessary at all. Insofar as he is concerned he [Cherry] has told us that Southers was conscious. Now, whether or not Southers was conscious is a matter for this jury to determine, not for me.'' Defendants' counsel then stated in effect that the requirement mentioned by plaintiff was not to be made a finding by the court but was for ''attesting admissibility.'' The court said that in its opinion the proper foundation had been laid. The court then said to the jury that it was not attempting to express any opinion ''as to the weight of this testimony or this evidence at all. You will have to determine all of these elements . . . I don't know whether Mr. Southers was conscious or unconscious. . . . You have to determine these things, not me.'' Several times throughout the trial the court informed the jury that they were to determine Southers' condition and the evidence concerning it. The court instructed that unless the jury believed that Southers heard, understood and agreed with the alleged statement of McGuire it could not consider the statement for any purpose. If there was any error in the first two sentences of the court's statement, it could not possibly have been prejudicial in view of the court's many statements concerning its duty and that of the jury.

2. (c) *Point of Impact.*

 ██ Officer Cherry, after being qualified as an expert on the subject (among other things he said that in his 40 years as a highway patrolman his investigation of traffic accidents was ''probably up in the thousands''), testified to the skid marks he found at the scene of the accident and to the physical damage to the vehicles involved, and opined that from his investigation, he determined the point of impact to be ''somewhere in the vicinity of the dividing line of the No. 2 and No. 3 lane . . .''

''Another point relied upon is that the testimony of the high-

way patrolman relative to the point of impact was not upon a matter subject to expert testimony and should not have been received. But, as was said in *Zelayeta* v. *Pacific Greyhound Lines*, 104 Cal.App.2d 716 [232 P.2d 572] : 'It is quite obvious that the conclusion, based upon the facts of a particular case, as to just where a collision between two vehicles occurred, may be so obvious that any reasonable person, trained or not, can draw that inference from the facts. It is equally clear that cases may occur where the opinions of trained experts in the field on this subject will be of great assistance to the members of the jury in arriving at their conclusions. In such cases a traffic officer who has spent years investigating accidents in which he has been required to render official reports not only as to the facts of the accidents but also as to his opinion as to their causes, including his opinion, when necessary, as to the point of impact, is an expert. Necessarily, in this field, much must be left to the common sense and discretion of the trial court.' (P. 727.)'' (*People* v. *Haeussler* (1953), 41 Cal.2d 252, 260 [260 P.2d 8].)

In view of the officer's many years of experience in investigating traffic accidents and reporting their causes to his superiors, and the fact that he based his opinion on an inspection of the skid marks and the condition of the struck vehicles, the trial court was justified in concluding that a determination, from these indicia, as to the point of impact might properly be made by an expert. See also *Robinson* v. *Cable*, 55 Cal.2d 425, 428 [11 Cal.Rptr. 377, 359 P.2d 929]; *Zelayeta* v. *Pacific Greyhound Lines* (1951), 104 Cal.App.2d 716, 726 [232 P.2d 572]; *Enos* v. *Montoya*, 158 Cal.App.2d 394, 399 [322 P.2d 472].)

2. (d) *Instructions.*

Instruction No. 28, if read alone, might support plaintiff's contention that silence on his part would warrant an inference that he was conscious of some blame for the accident. As he was a guest in the McGuire car and not the driver, this, of course, would be erroneous. However, a reading with it of the following instruction (also numbered 28) and all the instructions as a whole dispels any such notion. Appellants Nunsiale complain of instructions 5, 39, 40 and 41, on the ground that there was no differentiation in them of the case of plaintiff from that of cross-complainants Nunsiale. A reading of the instructions as a whole shows that there is no basis for the contention. Moreover, if any further clarifi-

cation were needed, and we see no necessity for it, appellants could have proposed instructions thereon. They offered and requested none. ▆▆▆▆ "In the absence of a request for clarification of given instructions, or that a desired instruction be given, a party is in no position to complain on review of the court's failure to take such action." (*Sullivan* v. *Matt* (1955), 130 Cal.App.2d 134, 143 [278 P.2d 499].)

### 3. *Conduct of Hertz Counsel.*

▆▆▆▆ Counsel for the Nunsiales suggested that Officer Cherry during his testimony was refreshing his memory from certain notes of his investigation. The court then asked the officer what memorandum he had with him on the stand. The officer indicated that he had a written statement by McGuire. Both attorneys for the Nunsiales and Southers objected that the officer was testifying from such statement. Answering the court, the officer denied that he was so doing. The Nunsiales' attorney asked that McGuire's statement be deposited with the clerk. The court then asked the witness when the statement had been obtained. He answered, ". . . in the hospital." Then Hertz' attorney asked the officer if he recalled his conversation with McGuire at the accident independently of the signed statement that he received from McGuire at the hospital. He said he did. No objection was made to any of the foregoing nor was any request made that it be disregarded. Appellants now contend that counsel for Hertz acted improperly in asking the question about the witness' independent recollection. We see no improper action. Moreover, if there were any, appellants having failed to object may not now claim error. (*Fowler* v. *Callis*, 159 Cal.App.2d 746, 751 [324 P.2d 728].)

The judgment is affirmed.

Tobriner, J., and Duniway, J., concurred.