[Crim. No. 3210. Third Dist. Nov. 27, 1961.]

THE PEOPLE, Plaintiff and Respondent, v. JAMES BRACAMONTE, Defendant and Appellant.

386

Earl Warren, Jr., under appointment by the District Court of Appeal, for Defendant and Appellant.

Stanley Mosk, Attorney General, Doris H. Maier, Assistant Attorney General, and C. Michael Gianola, Deputy Attorney General, for Plaintiff and Respondent.

PIERCE, J.—The sole question on this appeal from a judgment following a jury conviction for possession of heroin is whether admission in evidence of a police officer's testimony relating a medical examiner's opinion in appellant's presence constituting an unanswered accusation was prejudicial error. We have concluded that it was.

On Friday, October 14, 1960, appellant was an inmate of Yolo County jail, having been convicted of narcotics addiction, a misdemeanor. He had been incarcerated since August 18, 1960. Shortly before 3 p. m. of said October 14th, which was visitors' day, he, with several other prisoners, was in a large room on the second floor. Inmate R_____ S_____ was standing near the cell door talking to another prisoner, S_____ P_____. Appellant was notified that his girl friend had called on him. According to the testimony of R_____ S_____, called as a prosecution witness, appellant, as he left the room to go to the visitors' room, handed R_____ S_____ a Bull Durham tobacco sack and said, "Hold my money sack and I'll go downstairs for my visitor." R_____ S_____ put appellant's sack in his pocket.

Immediately after appellant's departure, Harry Germeshausen, a deputy sheriff, and another officer commenced a search of the room for narcotics. R_____ S_____ testified that while the search was progressing he had to answer a call of nature and was permitted to go into an adjoining restroom without search of his person. He stated that while he was in the restroom it occurred to him that the tobacco sack might also contain "what the officers were looking for," so he felt of it and felt a plastic paper. He then returned and handed the sack to Germeshausen and asked him whether that was what he was looking for. He also then informed the officer how he had come into possession of the sack. It was in this manner that the heroin, possession of which was later charged to appellant, came to be found. S_____ P_____ corroborated R_____ S_____'s story, excepting the portion regarding what had happened in the restroom, which was without corroboration.

During the course of the room search, a hypodermic syringe and other paraphernalia used by heroin addicts were found.

Appellant was interrogated and denied possession of narcotics, although later he claimed the money which had been in the tobacco sack. A short time after discovery of the heroin, he was taken to Yolo County General Hospital by Officer McElroy to be examined by a Dr. Ball.

The doctor was not called as a witness. McElroy, who was called as a prosecution witness, testified that he told Dr. Ball when he took appellant in for examination that he had caught appellant with narcotics (which, of course, was not true). He then testified: "I asked Dr. Ball if he would take a look at Bracamonte . . . Dr. Ball reached down, picked up his arm, looked at it and said that this man had fresh needle marks, and he looked at his eyes and he said that he's under the influence of narcotics now." According to witness McElroy, appellant "just sat there."

This testimony was introduced over the objection that it was hearsay. It was admitted on the theory that appellant's silence in the face of an accusation of guilt constituted an admission.

An accused's silence (or evasive or equivocal behavior) when orally accused of crime by another, does not always justify the admission in evidence of the hearsay accusation. In *People* v. *Simmons* (1946) 28 Cal.2d 699, 712-721 [172 P.2d 18], the court's majority opinion written by Justice Carter is an exhaustive treatise of the subject. For our purpose it may be epitomized as follows: Accusatory statements are plain hearsay. They are admissible as an exception to the hearsay rule only when they can properly be treated as admissions. If an accused categorically denies the accusation, of course there can be no justification for introduction in evidence. If, on the contrary, he admits their truth, accusations are clearly admissible. Where the accused stands mute or responds evasively or equivocally admissibility depends upon the circumstances existent. If admitted it is received as an accused's acquiescence in the truth of the statement or as indicative of a consciousness of guilt and upon the theory that the natural reaction of an innocent man to an untrue accusation is to deny it promptly. But the circumstances surrounding the unanswered accusation do not always permit such assumption. When a person is in the hands of his accusers he may well and soundly conclude that his best interests will be served by silence. In some jurisdictions if the accused is under arrest that fact alone renders the unanswered accusa-

tion inadmissible for the reason just stated, that "maintenance of silence is the best strategic policy for one in the custody of the law, and that it is entirely consistent with innocence." (P. 714.) California, with other states, has adopted the more flexible rule that the fact of arrest alone is not sufficient to exclude the testimony, but is one circumstance in determining whether the accused was afforded an opportunity to deny and whether he was naturally called upon to do so.

The California Supreme Court in *People* v. *Simmons, supra* (at pp. 715-716) holds this limited rule of admissibility preferable to that of strict nonadmissibility, pointing out that, "Many other forms of restraint have the same effect, such as fear, physical pain, suffering, advice of counsel, admonition as to silence, warning against self-incrimination, a belief that the accused will serve his best interests by silence, *or other physical or mental pressure.* A response under any of these forms of restraint may be such as will not give rise to an inference of acquiescence or guilty consciousness, . . . ." (Emphasis ours.) The opinion in the *Simmons* case (at p. 716) deplores a growing tendency of trial courts to fail fully to consider the question of whether the accused replied under restraint (giving, at it were, *carte blanche* to the prosecution in the matter). It also deplores (on p. 717) : "A practice popular among police officials as a means of obtaining evidence by means of tacit admissions . . . of reading detailed statements of the crime purportedly made by a codefendant or companion . . . ." One stated objection to this form of evidence is that a "vast amount of hearsay testimony otherwise utterly inadmissible" is placed before the jury under the guise of an unanswered accusation. And the court (on p. 719) quotes from Mr. Wigmore (8 Wigmore, Evidence (3d ed.) § 2251, p. 309) : " 'The real objection is that any system of administration which permits the prosecution to trust habitually to compulsory self-disclosure as a source of proof must itself suffer morally thereby. The inclination develops to rely mainly upon such evidence, and to be satisfied with an incomplete investigation of the other sources.' "

 Tested by the foregoing rules, the admission in evidence of the statements of the doctor was error. The only theory of admissibility was that these statements, unanswered, constituted acquiescence by appellant that he *was* under the influence of heroin and therefore impliedly had recently possessed a supply. But if appellant *were* then under the influence of heroin does not that fact alone make the unanswered

accusation inadmissible hearsay? Being drugged or intoxicated, quite as much as the other facts mentioned by the court in the *Simmons* case ("fear," "physical pain," "suffering," "physical or mental pressure") would explain silence and negate any expectation of denial. *His condition,* and not the unanswered accusation, becomes the proof of guilt. That truth was recognized by the district attorney in his argument to the jury when he said: "The doctor says . . . he's been taking the stuff by the looks of his eyes. He's under the influence. *Now does a man who isn't under it stand there and look into space?"*

In *Southers* v. *Savage,* 191 Cal.App.2d 100, 104 [12 Cal.Rptr. 470], a civil case wherein it was held the accusatory statements were properly admitted, the court observed that:

". . . Of course the doctrine [of adoptive silence] does not apply if the party is in such physical or mental condition that a reply could not reasonably be expected from him. [Citing cases.]"

Where opportune objection is made, proof of an accused's physical or mental condition cannot, of course, be by hearsay. And introduction of *this* hearsay was the more objectionable since it related to expert testimony: the opinion of a physician. (*Sexton* v. *Sexton,* 56 Cal. 426; *Estate of Scott,* 55 Cal.App.2d 780, 781-782 [131 P.2d 613].) By the methods employed by the prosecution appellant was deprived of an important right of cross-examination to test the adequacy of the examination and the value of the opinion based thereon.

[■] Receipt in evidence of this hearsay medical opinion being error, we also reach the conclusion that it was prejudicial. Absent the criticized hearsay, there was a reasonable hypothesis pointing to appellant's innocence. Although from all the evidence there was no reasonable doubt that the Bull Durham sack belonged to appellant and had been given to R____ S____ by appellant when he went to receive his visitor, the jury could readily have reasoned that the heroin was "planted" in the sack by R____ S____ when he went to the restroom to avoid its being found on him during the search and that the story told the searching officers was concocted. We think that but for its acceptance of the medical opinion related second-hand the jury might reasonably have concluded that appellant, a known addict, was being made the scapegoat.

We have not been unmindful of the trial court's admonition to the jury, after overruling defense counsel's objection to the introduction of this evidence, that it was not being admitted to prove the truth of the medical opinion but only an admission by appellant that it was true. This is a nice distinction which we have difficulty rationalizing and think may have left the jury similarly perplexed. Apparently the distinction also escaped the district attorney, as witness the excerpt from his argument quoted above.

The back-door method employed here by the district attorney of getting the medical opinion of the county physician before the jury was the more improper because it appears from the record that Dr. Ball, while no longer in Yolo County had moved no farther away than San Francisco.

Whether the failure to call the doctor was due to lethargy and lassitude, or to a misconceived diffidence over interrupting the routine of a busy doctor, or to a design to foreclose the right of cross-examination to counsel for the appellant, or to some more excusable reason, the result has been that appellant was not fairly convicted.

The judgment is reversed and the cause is remanded.

Peek, P. J., and Schottky, J., concurred.

A petition for a rehearing was denied December 20, 1961, and respondent's petition for a hearing by the Supreme Court was denied January 24, 1962.