[Crim. No. 4147. First Dist., Div. One. June 18, 1963.]

THE PEOPLE, Plaintiff and Respondent, v. JOHN L. FLYNN, Defendant and Appellant.

John L. Flynn, in pro. per., and Salvador A. Liccardo, under appointment by the District Court of Appeal, for Defendant and Appellant.

Stanley Mosk, Attorney General, Albert W. Harris, Jr., and Derald E. Granberg, Deputy Attorneys General, for Plaintiff and Respondent.

BRAY, P. J.—Defendant appeals from judgment after jury verdicts, finding him guilty of 10 counts of abortion.[1]

## QUESTIONS PRESENTED.

1. Was poll of jury improperly conducted?
2. Was evidence of undenied accusations admissible?
3. Was evidence of defendant's relationship with one prosecutrix unduly limited?
4. Were the abortees corroborated?
5. Was instruction that defendant was lawfully entitled to possession of the instruments of abortion, properly refused?

## EVIDENCE.

Defendant was indicted on 11 counts of felony (abortion). Counts 1 through 6 related to abortion of Gloria McFadden; counts 7 through 8 to abortion of Donna Grundy; and counts 9 through 11 to abortion of Mona Manry. Defendant admitted two prior convictions of abortion. The jury acquitted defendant of the count 9 charge of abortion of Mona Manry in 1959.

On October 21, 1960, Mrs. Gloria McFadden and Mrs. Mona Manry, both in the early stages of pregnancy, contacted the defendant, John L. Flynn, at his house trailer at a trailer court in Redwood City. Both women wished to terminate their pregnancies and had contacted defendant for this purpose.

The defendant's fee for performing an abortion was $250.

---

[1]Defendant also purports to appeal from order denying new trial. As this order is nonappealable, the purported appeal must be dismissed.

As security for the payment of the fee, defendant insisted that both women allow him to take several photographs of them in the nude. After the photographs had been taken, defendant proceeded to perform an operation on Mrs. Manry whereby he inserted a catheter containing a wire into her uterus. The same procedure was then followed with Mrs. McFadden. The women were instructed to return if the procedure was not successful.

Mrs. McFadden returned on five other occasions, October 22, October 23, October 25, October 26 and October 28, defendant each time performing the same operation. She finally had to be hospitalized to complete the miscarriage.

Mrs. Manry returned on October 26 for another operation. Her miscarriage took place the following day without medical attention.

About the middle of November of 1960, Mrs. Donna Grundy contacted defendant at his trailer. She went there in the company of Mrs. McFadden for the purpose of obtaining an abortion. The fee was set at $250. On November 25, defendant performed the same operation on Mrs. Grundy as on the other two women, requiring nude photographs as security for the fee also. Mrs. Grundy returned on November 26 for a subsequent operation. On November 28, surgery was performed by her doctor to complete the miscarriage.

Sometime between March and May of 1961, Mrs. McFadden told the police of her dealings with defendant. He was arrested on October 31, 1961. A search of the trailer produced, among other things, a flash camera, a feminine syringe, a folder of pictures of nude women, a letter written by Mrs. Manry to defendant asking for a loan (another portion of the security defendant required to protect his fee), an item of wire, and the negatives of 25 photographs of nude women.

Defendant did not testify at the trial.

1. POLL OF JURY.

On return of the jury with their verdicts, the clerk read the verdict as to each count separately and asked the jury as a whole if such was their verdict. The record shows that in each instance the jury responded that it was their verdict. No contention is made that the record in this respect is not correct. Then when the jury was dismissed, the following occurred: "MR. MORLEY [defense counsel]: I was going to have the jury polled, Your Honor, as requested. THE COURT: Didn't I poll them? I asked them. MR.

MORLEY: I didn't see the indication of all jurors that this was their verdict. I'm sorry, Your Honor. THE COURT: Well, you would have to have it all over again. I am not too sure in a criminal case if you are entitled to have a poll. We can ask a general question and ask if anyone disagrees with the verdicts as read by the clerk. MR. MORLEY: I would appreciate at least that, Your Honor. THE COURT: That is simple. The gentleman says he would like to have the jury polled . . . and if he had asked for it as we were going along, we would have done it. MR. MORLEY: I was standing, and I thought you noticed me standing. THE COURT: I'm sorry, I didn't mean to disregard your efforts. You should have just talked out. I will ask you, you have heard the clerk read the results of the eleven different counts and verdicts, and I have told you before everybody has to agree in order to get a verdict on any count. Is there any one of you who disagrees with the verdicts which were read to you on any one of the counts, on any Counts I to XI inclusive? In other words, in Numbers I through VIII everybody is agreed to guilty, is that right? [Jurors nod.] THE COURT: Is there any question about it? [No response.] THE COURT: I can see where some of the jurors are tired. From I to VIII did everybody vote guilty? [Jurors nod.] THE COURT: Does that take care of those eight counts for you? MR. MORLEY: Yes, Your Honor, apparently so. THE COURT: And on IX everybody voted not guilty, and the other two, X and XI everybody voted guilty? [Jurors nod.] THE COURT: Will that satisfy you? That will save us the time of going through it eleven times." Defense counsel made no further statements in this regard.

Section 1163, Penal Code, provides: ''When a verdict is rendered, and before it is recorded, the jury may be polled, at the request of either party, in which case they must be severally asked whether it is their verdict, and if anyone answer in the negative, the jury must be sent out for further deliberation.''

While section 1163 is phrased in terms which would appear to place the granting of a request to poll the jury in the' discretion of the trial court, similar language has been construed as conferring an absolute right to have the jury polled upon the making of a proper request. (See 49 A.L.R.2d 616, 621.) This would also appear to be the law in this state. (See *People* v. *Lessard* (1962) 58 Cal.2d 447, 452 [25 Cal. Rptr. 78, 375 P.2d 46].) However, the right itself

may be waived (*People* v. *Dean* (1958) 158 Cal.App.2d 572, 578 [322 P.2d 929]), as may be the right to assert defects in the manner of polling by failure to object to the method of polling employed by the trial court. (*People* v. *Wilkins* (1955) 135 Cal.App.2d 371, 379-381 [287 P.2d 555]; *People* v. *Lopez* (1913) 21 Cal.App. 188, 190 [131 P. 104].) *People* v. *Lessard, supra,* 58 Cal.2d 447, 452, holds: "Where a jury is incompletely polled and no request is made for correcting the error, such further polling may be deemed waived by defendant, who cannot sit idly by and then claim error on appeal when the inadvertence could have readily been corrected upon his merely directing the attention of the court thereto." (See also *People* v. *Porter* (1955) 136 Cal.App.2d 461, 469 [288 P.2d 561].)

 Evidencing such a waiver in the instant case is defendant's acquiescence in the method of polling which was used and his failure to object to the method when asked by the court if he was satisfied. It might also be drawn from the record that defendant failed to make a timely request to have the jury polled. In any event, since the record fails to disclose even a hint of disagreement among the jurors, the departure from the mode of polling prescribed by the Penal Code does not appear to have prejudiced the defendant in respect to any substantial right and should not invalidate the proceeding. (See Pen. Code, § 1404.)

2. UNDENIED ACCUSATIONS.

 Inspector Jones of the Redwood City Police Department testified to two conversations with defendant, one at the latter's trailer at the time of arrest and one thereafter in the district attorney's office. In both conversations defendant denied committing the abortions but talked freely about taking the pictures of the three prosecutrixes and another woman while they were nude, and other matters. At the second interview after such a discussion Mrs. Manry was brought in and defendant was asked if he knew her. He said that he did. She, in his presence, was then asked successively if defendant was the person who aborted her on two separate occasions and also aborted Mrs. McFadden. In each instance she answered that he was. Defendant remained mute, although up to that point he had been answering all questions asked him by the officers. Objection by defense counsel that defendant's silence was not an admission due to the fact that the questioning occurred at the district attorney's office was overruled by the trial court.

"It is . . . for the trial court in the first instance to determine the import of the accusatory statement; that is, whether it has been made under such circumstances that it may furnish a foundation for proof of conduct. It is then for the jury to decide, on any statement properly admitted, whether the accused did reply to it, and whether if he did not do so, or his reply was evasive or equivocal, it showed criminal intent or a consciousness of guilt, or acquiescence." (*People* v. *Simmons* (1946) 28 Cal.2d 699, 718 [172 P.2d 18].)

The fact that an accused is in police custody does not of itself preclude the admissibility of such evidence and is simply one of the circumstances to consider in determining whether the accused was afforded an opportunity to deny the accusation and whether he was naturally called upon to do so. (See *People* v. *Briggs* (1962) 58 Cal.2d 385, 409 [24 Cal. Rptr. 417, 374 P.2d 257]; *People* v. *Bracamonte* (1961) 197 Cal.App.2d 385, 389 [17 Cal.Rptr. 62].)

From the fact that defendant, although denying the acts of abortion, talked freely to the officers concerning his relations with the women, but became silent when Mrs. Manry stated that he committed the abortions, a reasonable inference could be drawn by the jury that her statements were true.

Defendant contends that the admission of evidence of the undenied accusations constituted reversible error. Citing *People* v. *Abbott* (1956) 47 Cal.2d 362, 372-373 [303 P.2d 730], and *People* v. *McGee* (1947) 31 Cal.2d 229, 238-239 [187 P.2d 706], to the effect that silence in the face of an accusation is not admissible as an admission when that silence is upon the advice of counsel, defendant argues for a rule which in essence would require a holding that his silence must be presumed to have been based upon the advice he could expect to receive from any counsel he later retained. It is further asserted that to permit the use of his silence in the face of an accusation as an admission has the practical effect of denying him the right to counsel and due process of law.

There is no authority to support defendant's position. The cases cited by defendant state that the silence must be as a result of express advice of counsel. To adopt defendant's position would completely destroy the rule of admissibility. And, it in no way appears how there results a deprivation of due process or of the right to counsel in this situation.

### 3. DEFENDANT'S RELATIONSHIP WITH DONNA.

■ Defendant next contends that he was improperly denied the opportunity to expose to the jury the bias and state of mind of the People's witness, Donna Grundy. On cross-examination of Mrs. Grundy defendant brought out the fact that subsequent to the abortions she saw defendant a number of times, had gone out with him socially at least two or three times, that defendant had been in her home, that she had gone bowling with him and had taken her children with her on one occasion, and that his relationship with her was "[r]eluctantly friendly and casual." Defense counsel then asked her if she had had sexual intercourse with defendant. The court sustained an objection to this question. Defense counsel stated the question was to tend to show bias or prejudice of the witness and the untruth of her testimony. The court stated that it did not think the question relevant for this purpose, that they were not trying her character, but that defendant could show "any animosity" but not by that question. Defendant did not pursue the matter. Later in discussing the matter with the court concerning a question asked of a witness as to whether he had seen defendant and Mrs. Grundy at a bowling alley, defense counsel contended that the testimony was admissible because of the probability that the friendly relationship between Mrs. Grundy and defendant might have changed when she found that he exhibited her picture in the nude and that she might have made up the abortion story. In the discussion that followed the court indicated it would allow further examination of the previous relationship between defendant and Mrs. Grundy if any showing of later animosity was made. The court commented that from his observation of her on the witness stand she seemed to show animosity towards the prosecution rather than towards defendant. No evidence was offered by defendant to show animosity of Mrs. Grundy toward defendant. In *People* v. *Tate* (1932) 124 Cal.App. 48 [12 P.2d 109], it was held that evidence of the meretricious relationship between a witness and the defendant was not proper for impeaching the credibility of the witness. "To go into the subject of the illicit relations existing between the prosecuting witness and the defendant would have been to run far afield and submit to the jury an issue which was wholly foreign to the case on trial." (P. 50.) In any event, as Mrs. Grundy admitted a friendly relationship with defendant had existed and no effort was made to

show any change in that relationship other than the fact that she testified against defendant under subpoena (the prosecution claimed that she was a reluctant witness as to them) there could have been no prejudice to defendant in sustaining the objection to the question of an illicit relationship. The same is true of the sustaining of an objection to a question asked witness Cochran if he had seen the two at the bowling alley. Mrs. Grundy had already admitted to going to a bowling alley with defendant, and the testimony would have been merely cumulative. Here again the court indicated that if some evidence of animosity on Mrs. Grundy's part was shown the question might be gone into.

### 4. CORROBORATION.

Section 1108 of the Penal Code provides: ''Upon a trial for procuring or attempting to procure an abortion, or aiding or assisting therein . . . the defendant cannot be convicted upon the testimony of the woman upon or with whom the offense was committed, unless she is corroborated by other evidence.''

*People* v. *Ames* (1957) 151 Cal.App.2d 714 [312 P.2d 111], holds that the testimony of one abortee may be used to corroborate that of another. Defendant contends, however, that this rule should not be applied here for the reason, he claims, that the abortees conspired by colluding to have him convicted of the abortions charged, to seek revenge upon him for the release by him of their pictures in the nude.

The record fails to support this claim of conspiracy. It is true that Gloria McFadden became angry with the defendant on account of the pictures being circulated and turned him in to the police. But Mona Manry testified that she had only mentioned the subject of the pictures to Gloria McFadden once, in February, 1961, and never again after that. The defendant was arrested in October, 1961. Donna Grundy's pictures were returned to her by the defendant. Thus, she would not even have the motive to conspire for the purposes asserted by defendant.

Whether the prosecutrixes were motivated as claimed by defendant and whether their testimony was true was a matter for the jury to determine. If the testimony was believed (and undoubtedly it was) the relevant testimony of each abortee would constitute corroboration of each of the others.

The test of the sufficiency of corroborating evidence

is whether "it tends to connect the defendant with the commission of the crime in such a way as may reasonably satisfy the jury that the witness who must be corroborated is telling the truth." (*People* v. *MacEwing* (1955) 45 Cal.2d 218, 224 [288 P.2d 257].) Such corroborating evidence is present in the case at bench.

Corroboration may be found in the testimony of each of the abortees showing that defendant had committed abortions on them in the same manner. (*People* v. *Weiss* (1958) 50 Cal.2d 535, 568-569 [327 P.2d 527]; *People* v. *Davis* (1954) 43 Cal.2d 661, 675 [276 P.2d 801].) Testimony relating to one count may be considered in corroboration of the testimony of a woman upon whom an abortion is alleged to have been performed in another count. (*People* v. *Berger* (1954) 128 Cal.App.2d 509, 514 [275 P.2d 759]; *People* v. *Kendall* (1952) 111 Cal.App.2d 204, 210-211 [244 P.2d 418].) The testimony of the abortees in the instant case shows a consistent pattern followed by defendant with regard to the abortions. Uniformly they were performed at his house trailer, the fee was always $250, nude photographs of the abortee were always required as collateral for the unpaid balance of the fee, and in each instance the operating technique employed was virtually identical.

Any woman upon whom an abortion was performed may act as a corroborating witness with respect to matters she may have observed in connection with the abortion of another woman. (*People* v. *Gallardo* (1953) 41 Cal.2d 57, 63 [257 P.2d 29].) Mrs. McFadden and Mrs. Manry were both present at defendant's trailer on October 21, 1960, and Mrs. McFadden saw the defendant perform an abortion on Mrs. Manry. Mrs. Manry said she did not watch the operation on Mrs. McFadden.

Corroboration may also be found in the defendant's silence in the face of accusatory statements. (*People* v. *Davis*, *supra*, 43 Cal.2d 661, 675; *People* v. *Collins* (1935) 4 Cal.App.2d 86 [40 P.2d 542].)

Corroboration may also come from the testimony of an accomplice. (*People* v. *Gallardo, supra,* 41 Cal.2d 57, 63.) Thus, corroboration for Mrs. McFadden's testimony may be found in the testimony of Mr. Hooker, Mrs. McFadden's fiancé, even though he be characterized as an accomplice. Hooker testified about taking Mrs. McFadden to defendant's trailer and picking her up on occasions and also about his payment of defendant's fee for aborting Mrs. Mc-

Fadden, partially by cash and partially by providing defendant with service, repairs and gasoline for his automobile.

5. INSTRUCTION ON LAWFUL POSSESSION.

Lastly, defendant contends the court improperly rejected the following instruction: "The defendant in this case was lawfully entitled to have in his possession the articles found by police officers in his trailer at the time of his arrest." Although the instruction is couched in general terms, defendant now relates the term "articles" to mean specifically the feminine syringe, the wire and the camera found by the police. Defendant contends, citing *People* v. *Pierson* (1945) 69 Cal. App.2d 285 [159 P.2d 39], and *People* v. *Murphy* (1943) 60 Cal.App.2d 762 [141 P.2d 755], that failure to give the instruction left the jury with an assumption that possession of the items was illegal in itself since they constitute means with which to perform abortions.

*Pierson* and *Murphy,* relied on by defendant, are to the effect that in a prosecution of a doctor of medicine for abortion it is proper to instruct that the defendant is in lawful possession of instruments used in effecting miscarriages since under certain conditions a doctor is lawfully entitled to procure a miscarriage. However, even when the defendant is a doctor of medicine, where the significant factor is not that the defendant has possession of such instruments but rather is the showing of his engagement in an illicit use of them, it is not error to fail to instruct that he had the right to possess such instruments. (*People* v. *Cummings* (1956) 141 Cal.App. 2d 193, 203 [296 P.2d 610].)

The wire, syringe and camera were in themselves innocuous, and defendant was lawfully entitled to have them in his possession. It was the improper and illegal use of them which made their possession significant. There is no indication in the record that any contention was made that mere possession of any of these articles was illegal. Even assuming, *arguendo,* that the instruction should have been given, the failure to do so could not possibly, in view of the overwhelming evidence of guilt, have been prejudicial. (Cal. Const. art. VI, § 4½.)

The judgment is affirmed. The purported appeal from the order denying new trial is dismissed.

Sullivan, J., and Molinari, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied August 14, 1963.